## SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
### CIVIL DIVISION

**MABLE JONES**
7 Latham Parkway
Elkins Park, PA 19027

   **Plaintiff**

v.

**GREGORY L. LATTIMER**
Law Offices of Gregory L. Lattimer, PLLC
1200 G Street, N.W., Suite 800
Washington, D.C. 20005

   **and**

**TED J. WILLIAMS**
Law Offices of Ted J. Williams
1200 G Street, N.W., Suite 800
Washington, D.C. 20005

   **Defendants**

CIVIL ACTION NO.: 000907.1-12



RECEIVED
Civil ......... Office
DEC 04 2012
Superior Court of the
District of Columbia
Washington, D.C.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

### COMPLAINT AND DEMAND FOR JURY TRIAL
#### (Legal Malpractice)

Plaintiff, Mable Jones, by and through her attorney, Wes P. Henderson of Henderson Law, LLC, files this Complaint and Demand for Jury Trial against Gregory L. Lattimer and Ted J. Williams, and in support thereof respectfully states as follows:

### PARTIES

1. Plaintiff, Mable Jones (hereinafter "Plaintiff" or "Dr. Jones"), is, and at all times relevant hereto was, a resident of the Commonwealth of Pennsylvania.

2. Defendant, Gregory L. Lattimer, is, and was at all times relevant hereto, an attorney with offices in Washington, D.C.

1

3.      Defendant, Ted J. Williams, is, and was at all times relevant hereto, an attorney with offices in Washington, D.C.

4.      Defendants, Gregory L. Lattimer and Ted J. Williams, were engaged by Plaintiff to pursue civil claims against Prince George's County, Maryland, Prince George's County Police Chief John Farrell, Officer Carlton Bailey and Officer Alexandre Jones, members of the Prince George's County Police Department arising out of and/or relating to the death of her son, Prince Carmen Jones, Jr.

**JURISDICTION**

5.      Subject matter jurisdiction of this Honorable Court is founded on D.C. Code Annotated, Sec. 11-921, *et seq.*

6.      *In personam* jurisdiction over the Defendants is premised upon D.C. Code, Section 13-423(a)(1) (transacting business in the District of Columbia).

**FACTS COMMON TO ALL COUNTS**

7.      Plaintiff, Mable Jones, adopts by reference the allegations contained in paragraphs 1 through 6 of this Complaint with the same effect as if herein fully set forth.

8.      On or about June 16, 2000, a Prince George's County police officer's gun was allegedly stolen.  The Prince George's County Police Department suspected that Darryl Gilchrest possessed the stolen weapon, and also suspected that Mr. Gilchrest twice assaulted police officers with sport utility vehicles using a black Jeep Cherokee during the first alleged assault and a red Dodge Durango during the second alleged assault.  The Prince George's County Police Department identified Chernier Hartwell as being a passenger in the Jeep Cherokee during the first alleged assault, and had information that Messrs. Gilchrest and Hartwell had allegedly

robbed a confidential informant at gunpoint just before September 1, 2000[1].   The Prince

George's County Police Department also suspected that Messrs. Gilchrest and Hartwell engaged

in drug trafficking together.

9.      In order to try and recover the stolen gun, the Prince George's County Police

Department decided to obtain a search warrant for Mr. Gilchrest's residence.  Because prior

surveillance of Mr. Gilchrest's mother's house demonstrated that he did not live there, the Prince

George's County Police Department needed to learn where Mr. Gilchrest was actually staying in

order to complete the warrant application.  In August and September 2000, Officers Jones and

Bailey were assigned to the Prince George's County Police Department District I Narcotics

Enforcement Team.  Officer Jones' duties included conducting narcotics investigations.  Acting

on confidential source information obtained on August 31, 2000 that Mr. Gilchrest frequented

the area of 5th and Kennedy Streets in the District of Columbia, Officers Jones and Bailey began

surveillance activities in the early morning hours of September 1, 2000 in the District of

Columbia, and later in Maryland and Virginia, just to try to determine Mr. Gilchrest's address.

10.      During surveillance, Officer Jones saw a black Jeep Cherokee, similar to the one

Mr. Gilchrest was known to drive, with Pennsylvania tags in the area of 5th and Kennedy Streets.

Officer Jones lost sight of the Jeep.  After a period of continued surveillance in the 5th and

Kennedy Streets area, Officer Jones radioed Officer Bailey and then left the District of Columbia

and drove to the Cyprus Creek Apartments in Hyattsville, Maryland, the suspected address for

Mr. Hartwell which Officer Jones had been given by a confidential informant on August 30,

2000.  While there, Officer Jones noticed the same black Jeep Cherokee that he had previously

seen in the District of Columbia arrive at the Cypress Creek Apartments.  After briefly observing

---

[1] The date of the alleged incident involving Plaintiff's deceased son has been reported as August 31, 2000 and

the black Jeep Cherokee and its driver, Officer Jones left to head back to the Prince George's County Police Department station.

11.     Some time thereafter, while driving back to the Prince George's County Police Department station, Officer Bailey saw near Chillum Road the black Jeep Cherokee that Officer Jones had seen earlier in the District of Columbia and in Maryland.  Officer Bailey began to follow the Jeep Cherokee and notified Officer Jones to rejoin the surveillance.  Officer Jones rejoined the surveillance in the District of Columbia, and he and Officer Bailey followed the Jeep Cherokee into Virginia.  At no time did either Officer Jones or Officer Bailey supposedly know that the Jeep Cherokee's driver was Plaintiff's son, Prince Carmen Jones, Jr.

12.     In Virginia, after Officer Jones followed the black Jeep Cherokee into a residential neighborhood, the Jeep pulled out of a driveway and passed Officer Jones going in the opposite direction on a residential street.  Officer Jones began to make a three-point turn, but before he could complete it, the Jeep apparently backed up to Officer Jones' driver side door.  The Jeep's driver then began to drive away, leading Officer Jones to believe the encounter had ended and that the driver was leaving.  Officer Jones then apparently heard tires spinning and saw the Jeep backing towards him.  The Jeep struck Officer Jones' SUV, which rocked Officer Jones inside his SUV.  The Jeep's driver then pulled the Jeep farther forward than he had been before the first collision, raced its engine and spun its wheels in reverse causing smoke to come from the Jeep's tires, and struck Officer Jones' SUV a second time.

13.     After the black Jeep Cherokee struck Officer Jones' SUV a second time, Officer Jones fired 16 shots from his gun into the back of the Jeep, hitting the Jeep's driver five times.  After the shooting, the Jeep's driver drove away.  No shots were fired as the Jeep drove away.

September 1, 2000.

Officer Jones drove to an intersection, called 911, and told the dispatcher that he had just shot Mr. Hartwell. In fact, Officer Jones had shot Plaintiff's son, who later died of his injuries.

14.     The following month, Candace Jackson, the mother of Plaintiff's son's daughter, Nina Jones, signed and filed with the Prince George's County Register of Wills a consent form asking that Plaintiff be appointed instead of Ms. Jackson as the personal representative of Plaintiff's son's estate. Ms. Jackson's consent form acknowledged that she could not withdraw her consent to Plaintiff's appointment except upon a showing of good cause. The Register of Wills indeed appointed Plaintiff as the personal representative of her son's estate on September 22, 2000.

15.     On or about December 5, 2000, Plaintiff, Individually and as the Personal representative of her son's estate, Prince Carmen Jones, Jr., filed a wrongful death action in the United States District Court for the District of Columbia against Prince George's County, Maryland, Prince George's County Police Chief John Farrell, Officer Bailey and Officer Jones, members of the Prince George's County Police Department. In Plaintiff's Complaint, she set forth claims of wrongful death, deprivation of her son's civil rights under 42 U.S.C. §1983, use of excessive police force, assault and battery, negligent training and supervision, and intentional infliction of emotional distress. Plaintiff also alleged that the Defendants engaged in civil conspiracy and stalking.

16.     After Plaintiff filed her complaint, the Defendants filed motions to dismiss under Federal Rule of Civil Procedure 12(b) alleging, in part, that venue was not proper in the District of Columbia and that the Court lacked personal jurisdiction over the Defendants. Plaintiff, through her counsel, responded that, due to her allegations of a civil conspiracy that was formed

5

in the District of Columbia, venue was proper in the District of Columbia and the Court had

personal jurisdiction over each Defendant.  The Defendants' motions to dismiss were denied

because Plaintiff's complaint set forth facts which, if proven, could establish the existence of a

civil conspiracy initiated and carried out partly in the District of Columbia.  Subsequent thereto,

Ms. Jackson and Prince Jones, Sr. filed a motion to intervene and stay the case, which was

denied.

       17.    In denying the motion to intervene, the Court found that Ms. Jackson and Mr.

Jones did not have standing to pursue a claim.  Honorable Judge Richard W. Roberts opined that:

> The Maryland Wrongful Death Act provides that "[i]f the wrongful act occurred in
> another state, the District of Columbia, or a territory of the United States, a Maryland
> Court shall apply the substantive law of that jurisdiction."  Md. Code 3-903 (1989);
> *Huang v. D'Albora*, 644 A.2d 1, 3 (D.C. 1994) (holding that the renvoi provision of the
> Maryland Wrongful Death Act specifically directs application of another state's
> substantive law when the wrongful act occurred in another state).  This statutory
> provision reflects Maryland's interest in adhering to the traditional *lex loci delicti*
> principle in tort cases, which provides that the locus of a tort is where the last act required
> to complete the tort occurred. *Wells v. Liddy*, 186 F.3d 505, 521 (4th Cir. 1999); *Hauch v.
> Connor*, 453 A.2d 1207, 1209-1210 (Md. 1983); *White v. King*, 223 A.2d 763, 765 (Md.
> 1966).
>
> The traditional rule was modified specifically in wrongful death actions to reflect that the
> locus of the tort is where the wrongful act causing the injury occurred.  *Farwell v. Un*,
> 902 F.2d 282, 287 (4th Cir. 1990).  In *Farwell*, the Fourth Circuit held that in wrongful
> death actions with multi-state connections, the choice of law provision of the Maryland
> Wrongful Death Act requires the application of the law of the place of the wrong, rather
> than application of the traditional *lex loci* rule.  *Id.*  The *Farwell* court held that "the
> Maryland statute specifically identifies the locus of the 'wrongful act' rather than the
> locus of death as the critical choice of law determinant in wrongful death actions with
> multi-state connections." *Id. See also Cremi v. Brown*, 955 F. Supp. 499, 523 (D. Md.
> 1997) (noting that the Fourth Circuit's decision in *Farwell* established that under
> Maryland law, in a wrongful death action, it is the law of the place of injury, not that of
> the place of death, which governs...
>
> Here, the wrongful acts which caused both Plaintiff's son's injury and his death occurred
> in Virginia.  Maryland law, then, required that Virginia law be applied to her case...
>
> Under Virginia law, only the personal representative of the estate – in this case, Mable

6

Jones – may bring an action for wrongful death on behalf of the estate. The Virginia statute provides that "[e]very such action under this section shall be brought by and in the name of the personal representative of such deceased person." Va. Code Ann. 8.01-50(B) (West 2011).

Virginia's decision to create an exclusive right of action in the personal representative advances Virginia's interest in creating a limited "single and exclusive" right of action on behalf of certain "designated beneficiaries" instead of a general right to recovery on behalf of the estate. *Semler v. Pyschiatric Inst. of Washington, D.C., Inc.*, 575 F.2d 922, 925 (D.C. Cir. 1978). The court in *Semler* noted "in an action for wrongful death the personal representative of the deceased sues primarily as trustee for certain statutory beneficiaries and not for the general benefit of the decedent's estate." *Id.*

Memorandum Opinion and Order, *Mable S. Jones v. Prince George's County, et al.*, No. 00-2902 RWR (D.D.C. Aug. 12, 2002).

18.     Plaintiff as the personal representative only had standing to bring an action for wrongful death on behalf of the decedent's minor daughter, Nina Jones. Va. Code 1950 8.01-50B. In fact, it is important to note that the Honorable Richard W. Roberts signaled in his opinion dated ***August 12, 2002*** that Plaintiff was bringing the wrongful death action "***on behalf of Nina Jones***," not on behalf of anyone else.

19.     Messrs. Lattimer and Williams did not advise Plaintiff that any recovery would only inure to the benefit of her granddaughter, Nina Jones. Nonetheless, the case filed in the United States District Court for the District of Columbia remained on the active docket for two more years. Ultimately, on or about March 23, 2004, Judge Roberts issued a memorandum opinion wherein he indicated that the Defendants moved for summary judgment on all of Plaintiff's claims. In moving for summary judgment on Plaintiff's civil conspiracy claim[2], the Defendants argued that Plaintiff could not establish that the Defendants conspired to violate her son's civil rights, thus making the United States District Court for the District of Columbia an

---

[2]   Judge Roberts noted that Plaintiff's complaint plainly alleged conspiracy, "but not in a distinct count which would call for its own findings of liability and damages in a verdict." In fact, Judge Roberts noted that Plaintiff "had proposed to, but did not, amend [her] complaint to more clearly set forth [her] conspiracy claim."

improper venue for your action and removing any bases for personal jurisdiction over the Defendants in that District. The Court found that Plaintiff did not place any material facts in dispute with respect to certain elements of her *prima facie* case for civil conspiracy and stalking claims, and the defendants were entitled to judgment as a matter of law on those claims. Because proper venue in the District of Columbia rested upon claims for which Plaintiff failed to establish a *prima facie* case, the Court found that proper venue lied in either the United States District Court for the District of Maryland or the Eastern District of Virginia.

20.     Ultimately, on June 24, 2004, the Court transferred Plaintiff's case to the United States District Court for the District of Maryland. During the time that Plaintiff was litigating her case in the United States District Court for the District of Columbia, Prince Carmen Jones, Sr., as father of Prince Jones, Jr. and as co-guardian of Nina Jones, and Candace Jackson, as co-guardian and next friend of Nina Jones, had filed a complaint on February 28, 2001 in the Circuit Court for Prince George's County, Maryland against Defendants Prince George's County, Prince George's County Police Chief John Farrell, and Officers Jones and Bailey, pursuant to the Maryland Constitution and the Maryland Wrongful Death Act, Md. Code Ann., Cts. & Jud. Proc. §3-901, *et seq*. The Plaintiffs in that case alleged, *inter alia*, that Officer Jones used excessive force and that he followed the vehicle operated by Plaintiff's son into Fairfax County, Virginia, initiated a confrontation, and wrongfully shot Plaintiff's son.

21.     On or about May 6, 2004, Ms. Jackson and Mr. Jones filed a second amended complaint in the Circuit Court for Prince George's County, Maryland. Since Ms. Jackson and Mr. Jones asserted federal claims in their second amended complaint, the Defendants removed the case on June 6, 2004 to the United States District Court for the District of Maryland. Upon

removal, the Defendants filed a motion to dismiss which was granted in part and denied in part. On November 9, 2004, the Defendants moved to dismiss counts one, five, six, and seven of the second amended complaint. On January 25, 2005, Plaintiff, as a Plaintiff by intervention in that matter, filed a motion for summary judgment. On February 7, 2005, Ms. Jackson and Mr. Jones field a motion for summary judgment. On April 28, 2005, the Court issued a Memorandum Opinion and Order on the pending motions. At that time, the Honorable Alexander Williams dismissed the federal claims being pursued by Mr. Jones and Ms. Jackson and remanded the case to the Circuit Court for Prince George's County, Maryland. The Court did not reach the motion Plaintiff filed or the one filed by Ms. Jackson and Mr. Jones, as the Court indicated that those motions would be resolved by the Circuit Court for Prince George's County, Maryland.

22. Plaintiff had intervened in the Circuit Court case, pursuant to Maryland Rule 15-1001, and filed a motion for summary judgment, asserting that, because the death occurred in the State of Virginia, the Virginia Wrongful Death Act controlled and, under that act, the personal representative was the only person with standing to bring suit. The Circuit Court ultimately granted summary judgment in Plaintiff's favor on that ground and dismissed the entire case. Then, Mr. Jones and Ms. Jackson noted an appeal and, before the Court of Special Appeals decided that matter, the Court of Appeals issued a writ of certiorari. The Court held, *inter alia*, that the plain language of the Maryland Wrongful Death Act provides that, when the wrongful act occurs in another state, the substantive law of that state applies; the circuit court therefore erred in ruling that the place of the death, as opposed to the place of the wrongful act, determines as a matter of substance which state's wrongful death statute applies. The Court observed that the allegations against the Defendants included some wrongful acts in Maryland and others in

. Virginia.

23.     The Court further held that the issue of who has standing to file a wrongful death action in Maryland is procedural, not substantive, and so is governed by the law of the forum state.  In Maryland, such matters of procedure are determined by the Maryland statutes on point, the Maryland Rules, and common law standing principles.  The Court ruled that, because neither the Maryland Wrongful Death Act nor the Maryland Rules specify who may properly file a wrongful death action in Maryland when the wrongful acts alleged have caused the death occurred, at least in part, outside of Maryland, common law standing principles applied; and that, under those principles, Plaintiff, Ms. Jackson, and Mr. Jones were aggrieved people with standing to sue.  The Court, therefore, reversed the grant of summary judgment and remanded the case for further proceedings.

24.     After being remanded, on January 9, 2006, a jury trial was held, which resulted in verdicts for $2.5 million in damages to Ms. Jackson, as next friend of Nina; $1 million dollars in damages to Plaintiff; and $200,000.00 in damages to Mr. Jones.  Thereafter, Officer Jones and the County filed a motion for judgment notwithstanding the verdict ("JNOV"), new trial, or to revise.  The Court granted the motion in part, striking the judgments in favor of Plaintiff and Mr. Jones because neither of them were permissible beneficiaries under the Virginia Wrongful Death Act.

25.     Plaintiff and Mr. Jones each filed notices of appeal.  Officer Jones and the County then filed a notice of cross-appeal as to those appeals, and a notice of appeal as to the judgment in favor of Ms. Jackson, as next friend of Nina.  Ms. Jackson then filed a notice of cross appeal.  During the pendency of the appeal, Mr. Jones and Ms. Jackson, on behalf of Nina, entered into

settlements with Officer Jones and the County, and voluntarily dismissed their appeals and cross-appeals. At that point, Plaintiff was the only remaining appellant. Officer Jones and the County were the appellees and cross-appellants. On appeal, Plaintiff raised the issue of whether the court erred in rejecting her argument that the appellees waived the issue of whether she was a permissible beneficiary under the Virginia Wrongful Death Act and in any event erred in ruling that she was not a permissible beneficiary. On or about January 26, 2007, the Court of Special Appeals responded to Plaintiff's appellate issue in the negative, such that it found in favor of Officer Jones and the County. In particular, the Court held that because Plaintiff did not have a substantive legal right to recover damages for her son's wrongful death, under the law of Virginia, the Circuit Court properly struck out the verdict in Plaintiff's favor.

26.    Meanwhile, Plaintiff's other case, which had been transferred to the United States District Court for the District of Maryland and was also pending in front of the Honorable Alexander Williams, Jr., continued to progress along until April 2, 2008 when Judge Williams granted summary judgment in favor of Officer Jones. The Court had previously granted summary judgment in favor of Defendants Prince George's County, Sergeant Alexandre Bailey, and Chief of Police John S. Farrell. In his April 2, 2008 Memorandum, Judge Williams noted that, during the pendency of Plaintiff's case and the numerous appeals, a settlement agreement was reached between Prince Jones, Sr. and Ms. Jackson wherein Mr. Jones was to receive $200,000.00 and Ms. Jackson was to receive $2,300,000.00 on behalf of Nina[3]. Judge Williams also noted that Plaintiff had dismissed her Virginia wrongful death claim, as the parent of an adult child decedent is not a permissible beneficiary in a wrongful death action if the adult child decedent is survived by a minor child.

11

27.     As such, the only real issue before Judge Williams was whether Plaintiff, as the personal representative of Prince Carmen Jones, Jr., could maintain a Maryland Survival Act claim when the wrongful act which led to the death of her son occurred in Virginia, considering that there had already been a recovery under the Virginia Wrongful Death Act.  Since there had already been a recovery for the statutory beneficiary – Nina Jones – the Court found that there could not be an additional recovery under the Survival Act to Plaintiff.  Accordingly, the Court granted summary judgment as to all remaining claims.

28.     Messrs. Lattimer and Williams noted an appeal to the United States Court of Appeals for the Fourth Circuit.  While Plaintiff's counsel apparently tried to appeal an April 28, 2005 order (see ¶21 above) and an April 2, 2008 order (see ¶26 above), the Fourth Circuit found that it lacked jurisdiction to resolve any issues from the April 28, 2005 order.  Plaintiff's counsel, therefore, did not properly note the appeal of the April 28, 2005 order, such that the Fourth Circuit only considered the April 2, 2008 Order.  In any event, on or about December 8, 2009, the Court entered an Order affirming the decision of the United States District Court for the District of Maryland.

29.     On or about December 22, 2009, Messrs. Lattimer and Williams filed a Petition for Rehearing or, in the Alternative, a Hearing En Banc on behalf of Plaintiff with the United States Court of Appeals for the Fourth Circuit.

30.     On or about January 5, 2010, the United States Court of Appeals for the Fourth Circuit entered an Order denying the petition for rehearing and rehearing en banc.

31.     On April 7, 2010, Mr. Lattimer sent an e-mail to Plaintiff as follows:

First, let me advise you that I have been doing legal research for the last week, and

---

[3] The Circuit Court for Prince George's County approved these  payments on September 27,  2006.

I am finally convinced that the way the Fourth Circuit handled the case makes it extremely unlikely that the Supreme Court would grant a Writ. We have sent the appendix over to the printer but I just don't see a way around the Fourth Circuit decision. I have not wanted to abandon the case because of all that has been put into it, but the fact of the matter is that I do not know if I can put a legitimate Writ together even if I have another month or two to do so. I am truly sorry for the way this case has evolved. We were offered $3 million while the case was still in federal court in D.C., we were offered $1 million after the Maryland Circuit Court trial and now we find ourselves on the outside looking in. In hindsight, all of us probably would have done some things differently and now we are left scrambling to salvage what remains of this case. However, the simple truth is that **no matter how much I tried to convince you that we had a real chance with the Supreme Court**, I can not convince myself of that fact once I try to put pen to paper. You should be aware that I too am convinced that any further expenditure of resources in this matter would be ill-advised just as several other lawyers have already informed you. (Emphasis Added).

32.     While the time to petition for a writ of certiorari to the United States Supreme Court had likely already expired as of the time of Mr. Lattimer's e-mail, he failed to advise Plaintiff of such.  Mr. Lattimer's e-mail establishes that he was still advising Plaintiff, after she lost at the United States Court of Appeals for the Fourth Circuit, that she had an excellent chance of ultimately prevailing.  Mr. Lattimer's e-mail sums up the erroneous advice provided to Plaintiff by Messrs. Lattimer and Williams.  Messrs. Lattimer and Williams never advised Plaintiff of the risk associated with turning down an offer made to her of "$3 million while the case was still in federal court in D.C." and the "$1 million after the Maryland Circuit Court trial." In particular, Messrs. Lattimer and Williams failed to advise Plaintiff that she lacked standing to pursue a claim and should accept the monies being offered.  If they did, Plaintiff would have accepted the settlement offers.  Now, Plaintiff has forever lost her ability to collect any monies associated with the death of her son.

13

## CAUSES OF ACTION

### COUNT I – LEGAL MALPRACTICE
### (Jones v. Lattimer)

33.     Plaintiff, Mable Jones, adopts by reference the allegations contained in paragraphs 1 through 32 of this Complaint with the same effect as if herein fully set forth.

34.     At all times relevant hereto, Gregory L. Lattimer held himself out to the public generally and to Plaintiff, specifically, as an attorney knowledgeable in handling personal injury actions, including claims for excessive force and police brutality.  Mr. Lattimer agreed to represent Plaintiff in her claim for injuries and damages against Prince George's County, Maryland, Prince George's County Police Chief John Farrell, Officer Bailey and Officer Jones, members of the Prince George's County Police Department and entered into an agreement with Plaintiff for compensation of the services provided by Mr. Lattimer.  Thus, Mr. Lattimer was in an attorney-client relationship with Plaintiff.

35.     Mr. Lattimer formed an attorney-client relationship with Plaintiff and owed her a duty to exercise that degree of care and skill which a reasonably competent attorney, engaged in a similar practice and acting in similar circumstances, would exercise.  This reasonable duty included, but was not limited to, making appropriate and reasonable settlement recommendations to Plaintiff.  Through Mr. Lattimer's representation of Plaintiff, he negligently advised her on multiple occasions that she should turn down any settlement offers by Prince George's County, Maryland, as she had an excellent case and a jury would award her significantly more than what was being offered to her.  Plaintiff, in reliance upon Mr. Lattimer's negligent advice, decided to turn down two settlement offers of at least One Million Dollars ($1,000,000.00).

36.     Defendant Lattimer breached the professional standard of care owed to Plaintiff

14

by negligently advising her that she should reject the settlement offers because her case had much greater value, failing to competently advise her as to the risk of turning down both settlement offers and, in fact, recommending that she do so. Mr. Lattimer, therefore, breached the duty of care owed to Plaintiff and, therefore, committed legal malpractice. Mr. Lattimer's recommendation in regard to settlement was one that no reasonable attorney, having undertaken a reasonable investigation into the facts and law as would be appropriate under the circumstances, and with knowledge of the same facts, would have made.

37.     The negligent legal advice provided by Mr. Lattimer was the proximate cause of Plaintiff's loss of two settlement offers of One Million Dollars ($1,000,000.00) or more, in that Plaintiff's decision not to accept the settlement offers was made in reliance upon advice provided by Mr. Lattimer that violated the standard of care. But for Mr. Lattimer's violation of the standard of care in failing to competently advise her as to the risks of turning down both settlement offers and, in fact, recommending that she do so, Plaintiff would have, to a reasonable degree of probability, secured a settlement offer and settlement monies of at least one million dollars ($1,000,000.00).

38.     As a direct and proximate result of Mr. Lattimer's negligence, as aforesaid, Plaintiff has forever lost her right to collect and obtain settlement monies of at least one million dollars ($1,000,000.00).

39.     Plaintiff did not cause or contribute to the injuries complained of herein.

WHEREFORE, Plaintiff, Mable Jones, demands judgment against Defendant, Gregory L. Lattimer, for compensatory damages in the amount of Five Million Dollars ($5,000,000.00), plus interest, costs and any and all other relief to which the Court finds her entitled.

## COUNT II – LEGAL MALPRACTICE
### (Jones v. Williams)

40.     Plaintiff, Mable Jones, adopts by reference the allegations contained in paragraphs 1 through 39 of this Complaint with the same effect as if herein fully set forth.

41.     At all times relevant hereto, Ted J. Williams held himself out to the public generally and to Plaintiff, specifically, as an attorney knowledgeable in handling personal injury actions, including claims for excessive force and police brutality.  Mr. Williams agreed to represent Plaintiff in her claim for injuries and damages against Prince George's County, Maryland, Prince George's County Police Chief John Farrell, Officer Bailey and Officer Jones, members of the Prince George's County Police Department and entered into an agreement with Plaintiff for compensation of the services provided by Mr. Williams.  Thus, Mr. Williams was in an attorney-client relationship with Plaintiff.

42.     Mr. Williams formed an attorney-client relationship with Plaintiff and owed her a duty to exercise that degree of care and skill which a reasonably competent attorney, engaged in a similar practice and acting in similar circumstances, would exercise.  This reasonable duty included, but was not limited to, making appropriate and reasonable settlement recommendations to Plaintiff.  Through Mr. Williams' representation of Plaintiff, he incompetently advised her on multiple occasions that she should turn down any settlement offers by Prince George's County, Maryland, as she had an excellent case and a jury would award her significantly more than what was being offered to her.  Plaintiff, in reliance upon Mr. Williams' negligent advice, decided to turn down two settlement offers of at least One Million Dollars ($1,000,000.00).

43.     Mr. Williams breached the professional standard of care owed to Plaintiff by negligently advising her that she should reject the settlement offers because her case had much

greater value, failing to competently advise her as to the risk of turning down both settlement offers and, in fact, recommending that she do so. Mr. Williams, therefore, breached the duty of care owed to Plaintiff and, therefore, committed legal malpractice. Mr. Williams' recommendation in regard to settlement was one that no reasonable attorney, having undertaken a reasonable investigation into the facts and law as would be appropriate under the circumstances, and with knowledge of the same facts, would have made.

44.    The negligent legal advice provided by Mr. Williams was the proximate cause of Plaintiff's loss of two settlement offers of One Million Dollars ($1,000,000.00) or more, in that Plaintiff's decision not to accept the settlement offers was made in reliance upon negligent advice provided by Defendants. But for Mr. Williams' violation of the standard of care in failing to competently advise her as to the risks of turning down both settlement offers and, in fact, recommending that she do so, Plaintiff would have, to a reasonable degree of probability, secured a settlement offer and settlement monies of at least one million dollars ($1,000,000.00).

45.    As a direct and proximate result of Mr. Williams' negligence, as aforesaid, Plaintiff has forever lost her right to collect and obtain settlement monies of at least one million dollars ($1,000,000.00).

46.    Plaintiff did not cause or contribute to the injuries complained of herein.

WHEREFORE, Plaintiff, Mable Jones, demands judgment against Defendant, Ted J. Williams, for compensatory damages in the amount of Five Million Dollars ($5,000,000.00), plus interest, costs and any and all other relief to which the Court finds her entitled.

Respectfully submitted:


Mable Jones
Plaintiff
By Counsel

HENDERSON LAW, LLC


By: _____
    Wes P. Henderson BAR NO.: 502935
    2101 Defense Highway
    Crofton, Maryland 21114
    (T) 410.721.1979
    (F) 443.458.0642
    wph@hendersonlawllc.com

    Attorney for Plaintiff
    Mable Jones

Dated: December 4, 2012

### DEMAND FOR JURY TRIAL

Plaintiff, Mable Jones, demands a jury trial on all issues triable by jury in this matter.


_____
Wes P. Henderson BAR NO.: 502935

18



**SUPERIOR COURT OF THE DISTRICT OF COLUMBIA**
**CIVIL DIVISION**

MABLE JONES
    Vs.                             C.A. No.     2012 CA 009074 M
GREGORY L LATTIMER et al

## INITIAL ORDER AND ADDENDUM

     Pursuant to D.C. Code § 11-906 and District of Columbia Superior Court Rule of Civil Procedure ("SCR Civ") 40-I, it is hereby **ORDERED** as follows:

     (1) Effective this date, this case has assigned to the individual calendar designated below. All future filings in this case shall bear the calendar number and the judge's name beneath the case number in the caption. On filing any motion or paper related thereto, one copy (for the judge) must be delivered to the Clerk along with the original.

     (2) Within 60 days of the filing of the complaint, plaintiff must file proof of serving on each defendant: copies of the Summons, the Complaint, and this Initial Order. As to any defendant for whom such proof of service has not been filed, the Complaint will be dismissed without prejudice for want of prosecution unless the time for serving the defendant has been extended as provided in SCR Civ 4(m).

     (3) Within 20 days of service as described above, except as otherwise noted in SCR Civ 12, each defendant must respond to the Complaint by filing an Answer or other responsive pleading. As to the defendant who has failed to respond, a default and judgment will be entered unless the time to respond has been extended as provided in SCR Civ 55(a).

     (4) At the time and place noted below, all counsel and unrepresented parties shall appear before the assigned judge at an Initial Scheduling and Settlement Conference to discuss the possibilities of settlement and to establish a schedule for the completion of all proceedings, including, normally, either mediation, case evaluation, or arbitration. Counsel shall discuss with their clients **prior** to the conference whether the clients are agreeable to binding or non-binding arbitration. **This order is the only notice that parties and counsel will receive concerning this Conference.**

     (5) Upon advice that the date noted below is inconvenient for any party or counsel, the Quality Review Branch (202) 879-1750 may continue the Conference **once**, with the consent of all parties, to either of the two succeeding Fridays. Request must be made not less than six business days before the scheduling conference date. No other continuance of the conference will be granted except upon motion for good cause shown.

     (6) Parties are responsible for obtaining and complying with all requirements of the General Order for Civil cases, each Judge's Supplement to the General Order and the General Mediation Order. Copies of these orders are available in the Courtroom and on the Court's website http://www.dccourts.gov/.

                                   Chief Judge Lee F. Satterfield

Case Assigned to: Judge CRAIG ISCOE
Date:  December 4, 2012
Initial Conference: 9:30 am, Friday, March 15, 2013
Location:  Courtroom 200
          500 Indiana Avenue N.W.
          WASHINGTON, DC 20001                        Caio.doc

## ADDENDUM TO INITIAL ORDER AFFECTING
## ALL MEDICAL MALPRACTICE CASES

In accordance with the Medical Malpractice Proceedings Act of 2006, D.C. Code § 16-2801, et seq. (2007 Winter Supp.), "[a]fter an action is filed in the court against a healthcare provider alleging medical malpractice, the court shall require the parties to enter into mediation, without discovery or, if all parties agree[,] with only limited discovery that will not interfere with the completion of mediation within 30 days of the Initial Scheduling and Settlement Conference ("ISSC"), prior to any further litigation in an effort to reach a settlement agreement. The early mediation schedule shall be included in the Scheduling Order following the ISSC. Unless all parties agree, the stay of discovery shall not be more than 30 days after the ISSC." D.C. Code § 16-2821.

To ensure compliance with this legislation, on or before the date of the ISSC, the Court will notify all attorneys and *pro se* parties of the date and time of the early mediation session and the name of the assigned mediator. Information about the early mediation date also is available over the internet at https://www.dccourts.gov/pa/. To facilitate this process, all counsel and *pro se* parties in every medical malpractice case are required to confer, jointly complete and sign an EARLY MEDIATION FORM, which must be filed no later than ten (10) calendar days prior to the ISSC. Two separate Early Mediation Forms are available. Both forms may be obtained at www.dccourts.gov/medmalmediation. One form is to be used for early mediation with a mediator from the multi-door medical malpractice mediator roster; the second form is to be used for early mediation with a private mediator. Both forms also are available in the Multi-Door Dispute Resolution Office, Suite 105, 515 5th Street, N.W. (enter at Police Memorial Plaza entrance). Plaintiff's counsel is responsible for eFiling the form and is required to e-mail a courtesy copy to earlymedmal@dcsc.gov. *Pro se* Plaintiffs who elect not to eFile may file by hand in the Multi-Door Dispute Resolution Office.

A roster of medical malpractice mediators available through the Court's Multi-Door Dispute Resolution Division, with biographical information about each mediator, can be found at www.dccourts.gov/medmalmediation/mediatorprofiles. All individuals on the roster are judges or lawyers with at least 10 years of significant experience in medical malpractice litigation. D.C. Code § 16-2823(a). If the parties cannot agree on a mediator, the Court will appoint one. D.C. Code § 16-2823(b).

The following persons are required by statute to attend personally the Early Mediation Conference: (1) all parties; (2) for parties that are not individuals, a representative with settlement authority; (3) in cases involving an insurance company, a representative of the company with settlement authority; and (4) attorneys representing each party with primary responsibility for the case. D.C. Code § 16-2824.

No later than ten (10) days after the early mediation session has terminated, Plaintiff must eFile with the Court a report prepared by the mediator, including a private mediator, regarding: (1) attendance; (2) whether a settlement was reached; or, (3) if a settlement was not reached, any agreements to narrow the scope of the dispute, limit discovery, facilitate future settlement, hold another mediation session, or otherwise reduce the cost and time of trial preparation. D.C. Code § 16-2826. Any Plaintiff who is *pro se* may elect to file the report by hand with the Civil Clerk's Office. The forms to be used for early mediation reports are available at www.dccourts.gov/medmalmediation.

Chief Judge Lee F. Satterfield

Caio.doc



**Superior Court of the District of Columbia**
CIVIL DIVISION
500 Indiana Avenue, N.W., Suite 5000
Washington, D.C. 20001 Telephone: (202) 879-1133

Mable Jones
_____
                                    Plaintiff

             vs.                                    Case Number    000907 1-12

Tea J. Williams
_____
                                    Defendant

### SUMMONS

To the above named Defendant:

You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty (20) days after service of this summons upon you, exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government, you have sixty (60) days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the party plaintiff who is suing you. The attorney's name and address appear below. If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

You are also required to file the original Answer with the Court in Suite 5000 at 500 Indiana Avenue, N.W., between 8:30 a.m. and 5:00 p.m., Mondays through Fridays or between 9:00 a.m. and 12:00 noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within five (5) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

Wes P. Henderson
_____
Name of Plaintiff's Attorney

2101 Defense Highway
_____
Address
Crofton, MD 21114

(410) 721-1979
_____
Telephone

                                    _Clerk of the Court_

By _____
                                    Deputy Clerk

Date   12/4/12

如需翻译,请打电话 (202) 879-4828    Veuillez appeler au (202) 879-4828 pour une traduction    Để có một bài dịch, hãy gọi (202) 879-4828
번역을 원하시면, (202) 879-4828 로 전화주십시오    የአማርኛ ትርጉም ለማግኘት (202) 879-4828 ይደውሉ

IMPORTANT: IF YOU FAIL TO FILE AN ANSWER WITHIN THE TIME STATED ABOVE, OR IF, AFTER YOU ANSWER, YOU FAIL TO APPEAR AT ANY TIME THE COURT NOTIFIES YOU TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY DAMAGES OR OTHER RELIEF DEMANDED IN THE COMPLAINT. IF THIS OCCURS, YOUR WAGES MAY BE ATTACHED OR WITHHELD OR PERSONAL PROPERTY OR REAL ESTATE YOU OWN MAY BE TAKEN AND SOLD TO PAY THE JUDGMENT. IF YOU INTEND TO OPPOSE THIS ACTION, _DO NOT FAIL TO ANSWER WITHIN THE REQUIRED TIME._

If you wish to talk to a lawyer and feel that you cannot afford to pay a fee to a lawyer, promptly contact one of the offices of the Legal Aid Society (202-628-1161) or the Neighborhood Legal Services (202-279-5100) for help or come to Suite 5000 at 500 Indiana Avenue, N.W., for more information concerning places where you may ask for such help.

See reverse side for Spanish translation
Vea al dorso la traducción al español

FORM SUMMONS - Jan. 2011                                    CASUM.doc





### TRIBUNAL SUPERIOR DEL DISTRITO DE COLUMBIA
### DIVISIÓN CIVIL
**500 Indiana Avenue, N.W., Suite 5000**
**Washington, D.C. 20001 Teléfono: (202) 879-1133**

_____
                             Demandante

      contra

                                     Número de Caso: _____

_____
                             Demandado

### CITATORIO

Al susodicho Demandado:

Por la presente se le cita a comparecer y se le require entregar una Contestación a la Demanda adjunta, sea en persona o por medio de un abogado, en el plazo de veinte (20) días contados después que usted haya recibido este citatorio, excluyendo el día mismo de la entrega del citatorio. Si usted está siendo demandado en calidad de oficial o agente del Gobierno de los Estados Unidos de Norteamérica o del Gobierno del Distrito de Columbia, tiene usted sesenta (60) días contados después que usted haya recibido este citatorio, para entregar su Contestación. Tiene que enviarle por correo una copia de su Contestación al abogado de la parte demandante. El nombre y dirección del abogado aparecen al final de este documento. Si el demandado no tiene abogado, tiene que enviarle al demandante una copia de la Contestación por correo a la dirección que aparece en este Citatorio.

A usted también se le require presentar la Contestación original al Tribunal en la Oficina 5000, sito en 500 Indiana Avenue, N.W., entre las 8:30 a.m. y 5:00 p.m., de lunes a viernes o entre las 9:00 a.m. y las 12:00 del mediodía los sábados. Usted puede presentar la Contestación original ante el Juez ya sea antes que Usted le entregue al demandante una copia de la Contestación o en el plazo de cinco (5) días de haberle hecho la entrega al demandante. Si usted incumple con presentar una Contestación, podría dictarse un fallo en rebeldía contra usted para que se haga efectivo el desagravio que se busca en la demanda.

                                     _SECRETARIO DEL TRIBUNAL_

_____
Nombre del abogado del Demandante

                             Por: _____

_____
Dirección                                          Subsecretario

_____

                             Fecha _____
_____
Teléfono

如需翻译,请打电话 (202) 879-4828    Veuillez appeler au (202) 879-4828 pour une traduction    Để có một bài dịch, hãy gọi (202) 879-4828

번역을 원하시면, (202) 879-4828 로 전화주십시요     የአማርኛ ትርጉም ለማግኘት፣ (202) 879-4828 ይደውሉ

IMPORTANTE: SI USTED INCUMPLE CON PRESENTAR UNA CONTESTACIÓN EN EL PLAZO ANTES MENCIONADO, O, SI LUEGO DE CONTESTAR, USTED NO COMPARECE CUANDO LE AVISE EL JUZGADO, PODRÍA DICTARSE UN FALLO EN REBELDÍA CONTRA USTED PARA QUE SE LE COBRE LOS DAÑOS Y PERJUICIOS U OTRO DESAGRAVIO QUE SE BUSQUE EN LA DEMANDA. SI ESTO OCURRE, PODRÍAN RETENERLE SUS INGRESOS, O PODRÍAN TOMAR SUS BIENES PERSONALES O RAÍCES Y VENDERLOS PARA PAGAR EL FALLO. SI USTED PRETENDE OPONERSE A ESTA ACCIÓN, _NO DEJE DE CONTESTAR LA DEMANDA DENTRO DEL PLAZO EXIGIDO_.

Si desea converser con un abogado y le parece que no puede afrontar el costo de uno, llame pronto a una de nuestras oficinas del Legal Aid Society (202-628-1161) o el Neighborhood Legal Services (202-279-5100) para pedir ayuda o venga a la Oficina 5000 del 500 Indiana Avenue, N.W., para informarse de otros lugares donde puede pedir ayuda al respecto.

Vea al dorso el original en inglés
See reverse side for English original

                                                   CASUM.doc