UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MABLE JONES,<br><br>              Plaintiff,<br><br>              v.<br><br>GREGORY L. LATTIMER, *et. al.*,<br><br>              Defendants. | Civil Action No. 12-2050 (BAH)<br><br>Judge Beryl A. Howell |

**MEMORANDUM OPINION**

Pending before the Court is the defendant Gregory Lattimer's motion to dismiss the plaintiff's claims against him or, alternatively, to grant summary judgment in his favor, under Federal Rules of Civil Procedure 12(b)(6) and 56. Def.'s Mot. Dismiss Alt. Summ. J. ("Def.'s Mem."), ECF No. 17. The plaintiff alleges in this legal malpractice suit that both defendants, who are attorneys, breached their duty of care to the plaintiff while representing her in a wrongful death action by negligently providing her settlement advice, thereby leading her to reject multiple settlement offers. *See generally* Complaint ("Compl."), ECF No. 1-2.[1] The defendant argues that the plaintiff has failed to state a cause of action under applicable D.C. law and that, in any event, the plaintiff's claims are barred by the statute of limitations. For the reasons stated below, the defendant's motion is denied.

---

[1] This case was originally filed in the Superior Court for the District of Columbia and timely removed to this Court, under 18 U.S.C. § 1332, because the amount in controversy exceeds $75,000 and there is complete diversity between the parties. The plaintiff is domiciled in Pennsylvania, the defendant Ted Williams is domiciled in Maryland, with his place of business in the District of Columbia, and defendant Gregory Lattimer has his place of business in the District of Columbia. *See* Notice of Removal ¶¶ 2, 3, ECF No. 1.

1

## I. BACKGROUND

The complaint alleges that the plaintiff's son was shot and killed on September 1, 2000, by officers of the Prince George's County Police Department, who, after conducting surveillance of the son's car in Maryland, followed him into Virginia, where he was shot five times. Compl. ¶¶ 9–13. The plaintiff subsequently retained the defendants to represent her to pursue wrongful death and civil rights claims "arising out of and/or relating to the death of her son." *Id*. ¶ 4. During that representation, the defendants filed a lawsuit in this Court on behalf of the plaintiff "Individually and as the Personal Representative of her son's estate," in December 2000. *Id.* ¶ 15. This suit was subsequently transferred to the District of Maryland, *id*. ¶ 20, and, on April 2, 2008, resolved with summary judgment granted to the defendants, *id*. ¶ 27. This decision was affirmed by the U.S. Court of Appeals for the Fourth Circuit on December 8, 2009, and the plaintiff's petition for rehearing was denied on January 5, 2010. *Id*. ¶¶ 28–30.

After the Fourth Circuit's final decision, defendant Lattimer sent an email, dated April 7, 2010, the text of which is set out in the complaint, advising the plaintiff that although "the appendix [was sent] to the printer," he is "finally convinced that the way the Fourth Circuit handled the case makes it extremely unlikely that the Supreme Court would grant a Writ." *Id*. ¶ 31. He further advised that "**no matter how much I tried to convince you that we had a real chance with the Supreme Court, I can not convince myself of that fact**" and "that I too am convinced that any further expenditure of resources in this matter would be ill-advised." *Id*. (emphasis in original).

While the federal case was pending in this Court and the District of Maryland, the defendants also represented the plaintiff in a wrongful death action before the Circuit Court for Prince George's County, Maryland. *Id*. ¶¶ 21–22. Although the plaintiff prevailed in a 2006

jury trial in that local action, the verdict in the plaintiff's favor was struck since, under the law of Virginia, which applied since that was the place of the son's wrongful death, the plaintiff, as personal representative of her son's estate, did not have a substantive legal right to recover damages when her son's child was the only permissible beneficiary and had previously settled the claim. *Id*. ¶¶ 22, 24–27.

During the course of the parallel federal and local lawsuits, the plaintiff alleges that she turned down settlement offers "made to her of '$3 million while the case was still in federal court in D.C.' and the '$1 million after the Maryland Circuit Court trial,' " because the defendants "never advised [her] of the risk" and "failed to advise [her] that she lacked standing to pursue a claim and should accept the monies being offered." *Id.* ¶ 32 (citing text of defendant Lattimer's email, dated April 7, 2010). According to the plaintiff, if she had not been given "erroneous advice," she "would have accepted the settlement offers" and has now "forever lost her ability to collect any monies associated with the death of her son." *Id*.

The plaintiff filed the instant complaint on December 4, 2012, asserting two claims of legal malpractice, one against each defendant. Defendant Williams has answered the complaint, *see* Williams Answer, ECF No. 4,[2] and discovery is proceeding pursuant to a Scheduling Order entered on February 28, 2014. *See* Feb. 28, 2014 Scheduling Order.

## II. LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff need only plead "enough facts to state a claim to relief that is plausible on its face" and to "nudge[ ] [his or her] claims across the line from conceivable to plausible." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007); *see also* FED. R. CIV. P. 12(b)(6). "[A] complaint [does not] suffice if it tenders 'naked

---

[2] Defendant Williams raises several affirmative defenses but does not raise either the statute of limitations or failure to state a cause of action based on "judgmental immunity" defenses at issue in the instant motion. Williams Answer at 6.

3

assertion[s]' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (alteration in original) (quoting *Twombly,* 550 U.S. at 557). "[T]he plaintiff [must] plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*; *accord Rudder v. Williams,* 666 F.3d 790, 794 (D.C. Cir. 2012). The Court "must assume all the allegations in the complaint are true (even if doubtful in fact) . . . [and] must give the plaintiff the benefit of all reasonable inferences derived from the facts alleged." *Aktieselskabet AF 21. November 2001 v. Fame Jeans Inc.,* 525 F.3d 8, 17 (D.C. Cir. 2008) (citations and internal quotation marks omitted).

The Federal Rules of Civil Procedure provide that if "matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment," and if a motion is so converted, "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." FED. R. CIV. P. 12(d). "The decision to convert a motion to dismiss into a motion for summary judgment . . . is committed to the sound discretion of the trial court." *Flynn v. Tiede-Zoeller, Inc.,* 412 F. Supp. 2d 46, 50 (D.D.C. 2006). "In exercising this discretion, the 'reviewing court must assure itself that summary judgment treatment would be fair to both parties.'" *Bowe–Connor v. Shinseki,* 845 F. Supp. 2d 77, 85–86 (D.D.C. 2012) (quoting *Tele-Commc'ns of Key W., Inc. v. United States,* 757 F.2d 1330, 1334 (D.C. Cir. 1985)).

## III. DISCUSSION

Defendant Lattimer argues that the plaintiff's claim against him, which is set out in Count I of the Complaint, should be dismissed, pursuant to Federal Rule of Civil Procedure 12(b)(6), on two grounds: first, the plaintiff has failed to state a cause of action for legal malpractice because D.C. law does not recognize a claim for "negligent settlement advice," Def.'s Mem. at 9–12;

4

and, second, the plaintiff's claims are barred by the three-year statute of limitations that applies to legal malpractice actions under D.C. Code § 12-301. *Id.* at 12–13. In view of the fact-specific inquiries on which these arguments are based, defendant Lattimer also invites the Court to consider factual matters outside of the Complaint to grant him summary judgment pursuant to Federal Rule of Civil Procedure 56. Each of the defendant's arguments are addressed, *seriatim*, below.

### A. SUFFICIENCY OF CLAIM FOR NEGLIGENT SETTLEMENT ADVICE

To prove legal malpractice under D.C. law, a plaintiff must (a) "show an applicable standard of care;" (b) "prove a breach of that standard;" and (c) "demonstrate a causal relationship between the violation and the harms enumerated in the complaint." *In re Estate of Curseen*, 890 A.2d 191, 193 (D.C. 2006) (citing *O'Neil v. Bergan,* 452 A.2d 337, 341 (D.C.1982)); *see also Crawford v. Katz*, 32 A.3d 418, 427 (D.C. 2011); *Biomet Inc. v. Finnegan Henderson LLP*, 967 A.2d 662, 664–65 (D.C. 2009). Defendant Lattimer contends that the plaintiff cannot meet these elements for a viable legal malpractice claim because the gravamen of her complaint concerns conduct for which attorneys in the District of Columbia are cloaked with "judgmental immunity," and therefore dismissal of the complaint against him is warranted. Def.'s Reply Pl.'s Opp'n Mot. Summ. J. ("Def.'s Reply") at 17, ECF No. 22. The Court disagrees.

At the outset, the parties dispute whether Maryland or District of Columbia law applies to evaluate the sufficiency of the plaintiff's legal malpractice claim. While the parties do not dispute that Maryland law recognizes a legal malpractice claim based on providing negligent settlement advice, *see* Def.'s Reply at 13–16; Pl.'s Opp'n Def.'s Mot. Dismiss Alt. Summ J. & Request Oral Arg. ("Pl.'s Opp'n") at 22, ECF No. 21; *see also Thomas v. Bethea*, 351 Md. 513,

5

528–29 (Md. 1998) (recognizing claim for legal malpractice for "an attorney's recommendation regarding the settlement of a dispute"), they differ on whether D.C. law recognizes a corresponding claim for negligent settlement advice. Relying on the D.C. Court of Appeals decision in *Biomet Inc.*, 967 A.2d 662, the defendant contends that D.C. law does not recognize such a legal malpractice claim based on "negligent recommendation." *See* Def.'s Mem. at 9; Def.'s Reply at 17. The plaintiff disputes this interpretation of D.C. law, Pl.'s Opp'n at 24–26, but, in any event, contends that under D.C. choice of law principles, Maryland law, not D.C. law, is applicable. *Id.* at 18–21.

When exercising diversity jurisdiction, a federal court applies the choice of law of the forum state. *Shaw v. Marriott Int'l, Inc.*, 605 F.3d 1039, 1045 (D.C. Cir. 2010); *Mastro v. Potomac Elec. Power Co.*, 447 F.3d 843, 857 (D.C. Cir. 2006) (choice of law analysis implicated "when [federal court is] deciding state-law claims under diversity or supplemental jurisdiction"); *Williams v. First Gov't Mortg. & Investors Corp.*, 176 F.3d 497, 499 (D.C. Cir. 1999) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)). Under District of Columbia choice of law principles, "the Court must first determine whether a 'true conflict' exists between the laws of the competing jurisdictions." *Margolis v. U-Haul Int'l, Inc.*, 818 F. Supp. 2d 91, 100 (D.D.C. 2011). Assuming such a conflict exists, District of Columbia "law will be applied unless the foreign state has a greater interest in the controversy." *Jones v. Clinch*, 73 A.3d 80, 82 (D.C. 2013) (quoting *Kaiser-Georgetown Cmty. Health Plan, Inc. v. Stutsman*, 491 A.2d 502, 509 (D.C. 1985)).

The Court is not persuaded that a "true conflict" exists between the law of Maryland and the District of Columbia under the circumstances alleged in this case.[3] In *Biomet Inc.*, the D.C.

---

[3] If there were a conflict in the applicable law between this forum and Maryland the Court would still decline to engage in a choice of law analysis because the allegations in the plaintiff's complaint are insufficient to evaluate

6

Court of Appeals used the term "judgmental immunity" to describe a doctrine that the court dated back to the 19th century Supreme Court case of *National Savings Bank v. Ward*, 100 U.S. 195, 198 (1880), which held that "an attorney is not liable for mistakes made in the honest exercise of professional judgment." 967 A.2d at 665. The Court of Appeals, in essence, promulgated a "reasonableness" standard, permitting an attorney sued for legal malpractice to prevail on grounds of "judgmental immunity," upon demonstrating "that (1) the alleged error is one of professional judgment, and (2) the attorney exercised *reasonable care* in making his or her judgment." *Id.* at 666 (emphasis added). *See also Encyclopaedia Britannica, Inc. v. Dickstein Shapiro, LLP*, No. 10-0454, 2012 WL 8466139, at *17 (D.D.C. Feb. 2, 2012) (noting that "the alleged attorney error to which the judgmental immunity principle applies must actually be a mistake of professional judgment," particularly "regarding an unsettled proposition of law," but does not cover "a simple administrative error").

This standard bears little substantive difference to Maryland's standard, which requires the plaintiff to allege that the recommendation "was one that *no reasonable attorney*, having undertaken a *reasonable* investigation into the facts and law as would be appropriate under the circumstances, and with knowledge of the same facts, would have made." *Thomas*, 351 Md. at 520 (quoting *Prande v. Bell*, 105 Md. App. 636, 656 (1995)) (emphasis added). Consequently,

---

adequately the choice of law issues raised by the defendant's motion "and therefore [choice of law analysis is] better suited to resolution on motions for summary judgment," after an opportunity for discovery. *La Reunion Aerienne v. Socialist People's Libyan Arab Jamahiriya*, 477 F. Supp. 2d 131, 137 (D.D.C. 2007), *aff'd in part on other grounds, appeal dismissed in part*, 533 F.3d 837 (D.C. Cir. 2008); *see also Clark Material Handling, Inc. v. Toyota Material Handling, U.S.A., Inc.*, No. 3:12-CV-510, 2012 WL 6107682, at *1 (W.D.N.C. Dec. 10, 2012) (declining to engage in choice of law analysis at motion to dismiss stage in order to fully develop factual record at the close of discovery); *Speedmark Transp., Inc. v. Mui*, 778 F. Supp. 2d 439, 444 (S.D.N.Y. 2011) (finding that choice of law determination is "premature on [] motion to dismiss, since the record" lacked necessary development for the fact-specific analysis) (collecting cases); *Arlandson v. Hartz Mountain Corp.*, 792 F. Supp. 2d 691, 699–700 (D.N.J. 2011) (recognizing that "[d]ue to the factual inquiry that may be necessary to properly weigh the [choice of law] Restatement factors, it can be inappropriate or impossible for a court to conduct that analysis at the motion to dismiss stage when little or no discovery has taken place") (internal quotation marks and citations omitted).

despite the D.C. Court of Appeals' use of the term "immunity," under both Maryland and D.C. law, an attorney in a legal malpractice suit must still prove that he or she "exercised reasonable care," *Biomet Inc.*, 967 A.2d at 666, or acted as a "reasonable attorney" would under the same circumstances in order to avoid liability. *Thomas*, 351 Md. at 520. *See Harris Teeter, Inc. v. Moore & Van Allen, PLLC*, 390 S.C. 275, 302 (S.C. 2010) ("The core of this [judgmental immunity] rule is nothing more than a tautology; it has always been clear that so long as an attorney exercises a reasonable degree of skill and care he will not suffer liability. Adopting a separate rule that restates that cardinal principle of our malpractice jurisprudence and denominates it an 'immunity' certainly is *de trop*."); *Sun Valley Potatoes, Inc. v. Rosholt, Robertson & Tucker*, 981 P.2d 236, 240 (Idaho 1999) ("Rather than being a rule which grants some type of 'immunity' to attorneys, [judgmental immunity] appears to be nothing more than a recognition that if an attorney's actions could under no circumstances be held to be negligent, then a court may rule as a matter of law that there is no liability.").

Notably, courts applying D.C. law have entertained legal malpractice claims based on negligent settlement recommendations, undercutting defendant Lattimer's argument that such claims are foreclosed under D.C. law. *See* Def.'s Mem. at 9–12. In the legal malpractice case of *Seed Co., Ltd. v. Westerman*, 840 F. Supp. 2d 116, 127 (D.D.C. 2012), the district court declined to grant summary judgment to the defendants on the plaintiffs' claim that they had refused a settlement offer based on the defendants' advice. *Id.* The court "deem[ed] that it would not be appropriate at this stage to grant summary judgment . . . with respect to the plaintiffs' erroneous legal advice claim, and denie[d] their motion . . . to allow the parties to develop a factual record regarding this claim." *Id. See also Crawford v. Katz*, 32 A.3d 418, 434 (D.C. 2011) (remanding legal malpractice case to trial court to address in the first instance "bad legal advice" argument

8

based on defendants' settlement advice); *Estate of Darby v. Medhin*, 1991 U.S. Dist. LEXIS 752, at *4 (D.D.C. Jan. 22, 1991) ("Under District of Columbia law, a settlement attorney is responsible for negligent advice given to a party to the settlement even though that party is not his client.").

The defendant relies on *Mills v. Cooter*, 647 A.2d 1118, 1121 (D.C. 1994), for the proposition that the plaintiff cannot maintain a legal malpractice suit based on "erroneous legal judgment." Yet this case simply does not hold that D.C. law denies recovery for claims of negligent settlement advice. In *Mills*, and unlike in *Biomet, Inc.*, the plaintiff failed to present evidence that the defendant had violated the applicable standard of care through his own oversight or negligence and, instead, essentially disagreed with his lawyer's trial strategy. *Id.* Contrary to the defendant's argument regarding "judgmental immunity" under D.C. law, the court expressly stated that "[w]e do not suggest that a legal malpractice claim could *never* lie as a result of an attorney's exercise of flawed legal judgment." *Id.* at 1122–23 (citing *Mims v. Mims*, 635 A.2d 320, 325 n.12 (D.C. 1993)) (emphasis in original).

Set against the explanation in *Biomet Inc.* for when an attorney's "honest exercise of professional judgment" precludes a legal malpractice claim, 967 A.2d at 665, the Court now turns to the allegation at issue here. Defendant Lattimer correctly sums up the plaintiff's complaint against him as providing her "with 'negligent recommendations' that she relied upon to her detriment" when she rejected "multiple settlement offers made to her of at least $1 million." Def.'s Mem. at 9. Specifically, the plaintiff alleges that the defendant advised her to reject the settlement offers "because her case had much greater value," Compl. ¶ 36, at the same time that he "failed to advise [her] that she lacked standing to pursue a claim and should accept the monies being offered," *id.* ¶ 32. As the defendant construes these allegations, the plaintiff

9

points to "no facts of which [counsel] was unaware but should have known," "no deadlines that should have been met that were not," and "no defendants and/or claims that should have been pursued, but were not." Def.'s Reply at 17. Rather, the defendant contends that the plaintiff accuses him of recommending that she reject the settlement offers due to his "fail[ure] to research, investigate, and reasonably advise her of the risks associated with rejecting the settlement offers." *Id.* at 20. In his view, even if these allegations were correct, and his "judgment was erroneous," Def.'s Mem. at 11, this would not show "derelictions on the part of [] counsel" and therefore "cannot form the basis of a claim for legal malpractice." *Id.*

Putting aside the defendant's vigorous denial of the factual allegations underlying the instant complaint,[4] the defendant's argument misses the point. The plaintiff is not disputing the reasonableness or correctness of the legal advice the defendant says he provided about her lack of standing in her personal capacity. Rather, the plaintiff disputes that she received this advice at all. She also directly contradicts the defendant's assertion that he recommended acceptance of the settlement offers and alleges instead that the defendant advised her to reject those offers for reasons that she has outlined in her Complaint. *See* Compl. ¶¶ 35–36 ("Through Mr. Lattimer's representation of Plaintiff, he negligently advised her on multiple occasions that she should turn down any settlement offers;" "Plaintiff, in reliance upon Mr. Lattimer's negligent advice,

---

[4] Defendant Lattimer asserts that he, in fact, told the plaintiff that she "had no viable cause of action in her personal capacity" and recommended that she accept the settlement offers. Def.'s Reply at 20–21. These assertions are bolstered by the excerpts provided of defendant Lattimer's testimony in the Orphan's Court for Prince George's County on August 17, 2001, *see* Def.'s Reply at 18, as well as the fact that after negotiating a settlement offer in 2004, he "personally informed" opposing counsel that he would recommend its acceptance, *id*. at 10. Moreover, he has provided two affidavits, backed up with over 20 exhibits, to show that the plaintiff, who is "well-educated," was involved in "every aspect of the settlement discussions" that occurred on five separate occasions and "steadfastly refused" to accept the settlement offers "**against the advice of counsel**, for reasons as silly as not wanting her ex-husband to recover anything, or not wanting the lawyers representing her ex-husband to be paid attorneys' fees off the death of her son." Def.'s Mem. at 9 (emphasis in original); Aff. of Gregory L. Lattimer, ¶¶ 7–14, ECF No. 17-20 (summarizing settlement discussions terminated and/or offers rejected by the plaintiff from October 2002–March 2003, when $4,450,000 offer rejected; from November 2003 to early 2004; in March 2005; before the 2006 trial when $1,000,000 offer rejected; and after the 2006 trial, when $1,000,000 offer rejected); Supp. Aff. of Gregory L. Lattimer ¶ 4, ECF No. 22-3. Notwithstanding these substantive factual showings, as explained *infra,* summary judgment is inappropriate at this time.

10

decided to turn down two settlement offers;" Mr. Lattimer "fail[ed] to competently advise her as to the risk of turning down both settlement offers and, in fact, recommend[ed] that she do so"). These are factual disputes over whether advice was given, not disputes over the reasonableness of the defendant's legal advice. Consequently, the determination of whether the plaintiff *received* the legal advice the defendant claims he gave is not suitable for resolution on a motion to dismiss.

In sum, the plaintiff has plead sufficient facts in her Complaint to state a claim for legal malpractice. The plaintiff states that defendant Lattimer owed the plaintiff "a reasonable duty," which included "making appropriate and reasonable settlement recommendations to Plaintiff." Compl. ¶ 35. The plaintiff also states that defendant Lattimer "never advised Plaintiff of the risk associated with turning down" a $3 million settlement offer while her wrongful death action was in federal court, and a $1 million settlement offer while the case was in Maryland Circuit Court. *See* Compl. ¶ 32. The plaintiff further alleges that defendant Lattimer "negligently advised [the plaintiff] on multiple occasions that she should turn down any settlement offers" and that the plaintiff turned down these two settlement offers in reliance on this advice. *Id.* ¶ 35. The plaintiff pleads that this "negligent legal advice . . . was the proximate cause of Plaintiff's loss of two settlement offers." *Id.* ¶ 37. Thus, the plaintiff has sufficiently pled a viable claim for legal malpractice under either Maryland or D.C. law. Accordingly, the Court denies the defendant's motion to dismiss due to the plaintiff's failure to state a claim.

**B. STATUTE OF LIMITATIONS IS LIKELY NO BAR TO COMPLAINT**

Defendant Lattimer contends that the plaintiff's suit is time-barred because, under any of three possible dates of accrual, the latest of which was "four(4) years and eight(8) months before plaintiff's complaint was filed in this case," Def.'s Mem. at 13, the statute of limitations had

already expired by the time the plaintiff filed her complaint. The plaintiff counters that the continuing representation theory applies, which tolls the statute of limitations until the date when the defendant ceased representing the plaintiff " 'in the subject matter in which the error has occurred.' " Pl.'s Opp'n at 30 (quoting Mallen & Smith, Section 23.13 at 419). Although defendant Lattimer discounts the plaintiff's continuous representation argument as "unabashedly frivolous," Def.'s Reply at 21, such hyperbole is no substitute for facts. Accordingly, because a critical, undisputed allegation in the Complaint makes clear that the defendant continued to represent the plaintiff up to April 2010, within the three-year statute of limitation, the Court denies the defendant's motion to dismiss and finds that the plaintiff's suit is timely.

The applicable statute of limitations under District of Columbia law for legal malpractice is three years "from the time the right to maintain the action accrues." D.C. Code § 12-301(8); *see also Wagner v. Sellinger*, 847 A.2d 1151, 1154 (D.C. 2004); *Knight v. Furlow*, 553 A.2d 1232, 1233 (D.C. 1989). D.C. follows the "injury" rule, under which a cause of action for "legal malpractice accrues when the plaintiff-client suffers actual injury." *See Hunt v. Bittman*, 482 F. Supp. 1017, 1020 (D.D.C. 1980), *aff'd*, 652 F.2d 196 (D.C. Cir. 1981). In legal malpractice cases, however, the D.C. Court of Appeals has adopted the "continuous representation" rule, under which "the cause of action is tolled until the attorney ceases to represent the client in the specific matter at hand." *R.D.H. Commc'ns, Ltd. v. Winston* (*Winston*), 700 A.2d 766, 768 (D.C. 1997) (adopting the continuous representation rule); *see also Encyclopaedia Britannica, Inc.*, 2012 WL 8466139, at *6 ("Under this rule, 'when the injury to the client may have occurred during the period the attorney was retained, the malpractice cause of action does not accrue until the attorney's representation concerning the particular matter in issue is terminated.' " (quoting *Winston*, 700 A.2d at 768)). "The rule's primary purpose is to avoid placing a client in the

untenable position of suing his attorney while the latter continues to represent him." *Winston*, 700 A.2d at 768 (quoting *Williams v. Mordkofsky*, 901 F.2d 158, 163 (D.C. 1990)). For that reason, the rule is limited "to situations in which the attorney who allegedly was responsible for the malpractice continues to represent the client in that case." *Williams*, 901 F.2d at 163 (quoting *Glamm v. Allen,* 57 N.Y.2d 87, 94 (N.Y. 1982)).

Defendant Lattimer contends that the plaintiff's instant negligence cause of action began to accrue on one of three dates: first, on November 27, 2006, when the plaintiff sent a letter on her own to the Prince George's County Executive seeking a settlement for $2 million, after which the defendant was not "involved in any way" in settlement discussions "of any kind," Def.'s Mem. at 6, 12; second, on January 26, 2007, when the plaintiff's local wrongful death case was terminated upon the Court of Special Appeals of Maryland affirmance of the trial court's ruling striking the verdict in the plaintiff's favor, *id.* at 13; or, third, on April 2, 2008 when the plaintiff's federal claims were dismissed by the U.S. District Court for Maryland. *Id.*; *see also id.* Ex. 11, ECF No. 17-12 (docket sheet in federal case indicating that the clerk was directed to close the case on this date).[5] The defendant argues that the latest of these dates still falls outside of the three-year statute of limitations for legal malpractice, rendering the plaintiff's case untimely.

According to the plaintiff, the defendant's representation of the plaintiff continued "well after December 4, 2009 (i.e. three years before the filing of the Complaint)," because the defendant continued to "render services" to the plaintiff after this date. Pl.'s Opp'n at 31. The plaintiff's Complaint sets out the contents of an email, dated April 7, 2010, sent from defendant

---

[5] The Court may take notice of matters of public record, such as judicial opinions and orders, on a motion to dismiss without converting it into a summary judgment motion. *Jacobsen v. Oliver*, 201 F. Supp. 2d 93, 110 (D.D.C. 2002) (citing *Marshall Cnty. Health Care Auth. v. Shalala,* 988 F.2d 1221, 1222 (D.C.Cir. 1993)). The consideration of this order closing the case, therefore, does not militate that the Court convert the instant motion into a summary judgment motion.

Lattimer to the plaintiff informing her that he had "been doing legal research for the last week" and had "sent the appendix over to the printer" but found it "extremely unlikely that the Supreme Court would grant a Writ," Compl. ¶ 31, to review the Fourth Circuit's unpublished *per curiam* order affirming the district court's grant of summary judgment for the defendants. *See* Pl.'s Opp'n Ex. 17, ECF No. 21-17. The defendant elaborates in this same email that he did "not want to abandon the case" and that he "tried to convince [the plaintiff] that [they] had a real chance with the Supreme Court." Compl. ¶ 31.

Defendant Lattimer does not deny that he sent the April 7, 2010, email regarding an appeal of the federal case, or dispute the authenticity of the contents as relayed by the plaintiff. Instead, he attempts to discount the relevance of this email to the timeliness of the instant suit by distinguishing between the plaintiff's federal litigation and the plaintiff's litigation in Maryland Circuit Court, claiming that "the federal court survival action for the benefit of the Estate[] is not the same litigation as the litigation in which she is contending that negligence occurred." *See* Def.'s Reply at 22. This assertion is puzzling, however, since the plaintiff is plainly claiming negligence in both the federal and state litigation, because she rejected settlements on the defendant's purported advice in both actions.

In any event, even if the federal and state litigation concluded at different times, defendant Lattimer represented the plaintiff in both cases, which were so closely related that the continuous representation rule applies to both. Courts have provided "little guidance" regarding the scope of a "particular matter at issue." *De May v. Moore & Bruce, LLP*, 584 F. Supp. 2d 170, 181 (D.D.C. 2008) (collecting cases) (quoting *Winston*, 700 A.2d at 768). Certainly, the continuous representation rule does not apply where the attorney represents the same client in a wholly different matter, *see id.*, or where the client finds new representation for the same matter.

14

*See, e.g.*, *Encyclopaedia Britannica, Inc.*, 2012 WL 8466139, at *15–16 (finding that defendant, who had represented plaintiff in PTO patent litigation, did not continuously represent the plaintiff in litigation to enforce patents against other parties, in part because plaintiff "retained another firm to actually handle the litigation"). Yet, where, as here, the plaintiff continues to be represented by the same attorney, even after an adverse decision, the statute of limitations period is tolled for the period of that representation. *See Winston*, 700 A.2d at 769 (finding that continuous representation rule tolled statute of limitations, even after plaintiff's FCC petition was denied due to defendant's error, in part because plaintiff did not "hire[] a new attorney" and chose "to stay the course with" defendant).

Moreover, as the court found in *De May*, the continuous representation rule may extend to different legal actions where they "all relate[]" to the same issue. 584 F. Supp. 2d at 182. In that case, the defendants' creation of four trusts for the plaintiff and subsequent representation of the plaintiff in a tax audit and Tax Court litigation related to those trusts were deemed related matters for purposes of tolling under the continuous representation rule because the issues "all related to . . . defendants' attempt to structure these trusts to minimize plaintiffs' tax burden." *Id*. The court held that the defendants continuously represented the plaintiff for almost a decade where "defendants' roles in creating and amending the trusts, administering the trusts, and defending the trusts against the IRS were all inextricably intertwined and without interruption for almost a decade." *Id.* at 182. That case is similar to the facts in the instant case in which both the federal and state cases arose out of the same incident involving the wrongful death of the plaintiff's son.

Here, defendant Lattimer presents two theories to bolster his argument that the continuous representation rule ceased to be tolled more than three years before the plaintiff filed

15

the present suit. All his arguments are inapposite. First, defendant Lattimer claims that he was no longer involved in settlement disputes after the date of the last settlement negotiation in November 2006. Def.'s Mem. at 12. By focusing on one event in the course of litigation, however, the defendant loses sight of the fact that the continuous representation rule tolls accrual of the plaintiff's cause of action until the representation in the litigation as a whole has ended, not when the defendant ceased working on the particular issue giving rise to the cause of action. *See Winston*, 700 A.2d at 769. The defendant does not otherwise contest that he continued to represent the plaintiff past this date. Def.'s Mem. at 12.

Second, the defendant argues that the plaintiff's federal and state actions are not related because the plaintiff did not have a personal right to recovery in the federal case. Def.'s Reply at 21–22. Such a distinction is specious. The plaintiff retained the defendant to represent her in claims arising from the same facts and against the same defendants in actions that were litigated concurrently. Compl. ¶¶ 15–29, 34. The defendant fails to point to a single case that finds that the right to recovery determines whether representation is continuous. *See* Def.'s Reply at 21–22. In fact, defendant Lattimer originally argued in his Motion to Dismiss that the Court could "take into account the lawsuit that was [] pending in the U.S. District Court for Maryland" for purposes of determining tolling under the continuous representation rule. Def.'s Mem. at 13. The defendant's own recounting of the facts amply demonstrates that the two actions are related. *See* Def.'s Mem. at 6. The defendant concedes that the plaintiff was offered a $1 million settlement of her state law claims by Prince George's County if she agreed to dismiss her federal court lawsuit against the same defendant and its employees, further confirming the inter-relatedness of the parallel actions. *See id*. Thus, the continuous representation rule applies to toll the statute of limitations until defendant Lattimer's representation of the plaintiff ceased,

16

which was, at the earliest, on April 7, 2010, when the defendant informed the plaintiff that he had "sent an appendix" for the plaintiff's writ of certiorari "to the printer" and had "been doing legal research for the last week," but nonetheless advised the plaintiff to stop the litigation. Compl. ¶ 31.[6] Accordingly, because it is clear from the face of the complaint that the defendant represented the plaintiff within three years of the plaintiff filing the complaint, and because the defendant's countervailing arguments are unavailing, the Court denies the defendant's motion to dismiss the complaint as barred by the statute of limitations.

### C. The Court Will Not Convert the Motion to Dismiss To a Summary Judgment Motion With Respect to Defendant's Failure to State A Cause of Action Claim

Defendant Lattimer filed the instant motion before the parties had much opportunity to obtain discovery. *See* Def.'s Mem.; April 4, 2013, Minute Order. "As the Supreme Court and this Circuit have repeatedly held, summary judgment is ordinarily appropriate only after the plaintiff has been given an adequate opportunity to conduct discovery." *McWay v. LaHood,* 269 F.R.D. 35, 39 (D.D.C. 2010); *accord Convertino v. U.S. Dep't of Justice,* 684 F.3d 93, 99 (D.C. Cir. 2012) ("[S]ummary judgment is premature unless all parties have 'had a full opportunity to conduct discovery.'" (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986))); *Americable Int'l v. Dep't of Navy,* 129 F.3d 1271, 1274 (D.C. Cir. 1997) ("[S]ummary judgment ordinarily 'is proper only after the plaintiff has been given adequate time for discovery.'" (quoting *First Chi. Int'l v. United Exch. Co.,* 836 F.2d 1375, 1380 (D.C. Cir. 1988))). The

---

[6] The plaintiff has not requested an opportunity for discovery with respect to defendant Lattimer's statute of limitations claim in order to adequately respond to defendant Lattimer's argument. *See* Jones Aff. ¶¶ 23–24. Indeed, the facts alleged in the pleadings are sufficient to resolve the statute of limitations issue raised by the defendant. *See Jacobsen*, 201 F. Supp. 2d at 109 (noting that resolution of statute of limitations defense on motion to dismiss is "unusual" but resolved the issue because "there [were] no outstanding factual issues in dispute that would preclude the resolution of this issue on a motion to dismiss"). Accordingly, because further factual development is not necessary and because the Court need not consider "matters outside the pleadings," FED. R. CIV. P. 12(d), the Court will not convert the defendant's motion to dismiss on statute of limitations grounds into a motion for summary judgment. *See Flynn,* 412 F. Supp. 2d at 50 (deciding to convert motion to dismiss into summary judgment motion "is committed to the sound discretion of the trial court").

exercise of discretion under Federal Rule of Civil Procedure 12(d) to convert a motion to dismiss to a motion for summary judgment is usually only appropriate where (1) the evidence submitted is sufficiently comprehensive to conclude that further discovery would be unnecessary; and (2) the non-moving party has not been unfairly disadvantaged by being unable to access the sources of proof necessary to create a genuine issue of material fact. *See, e.g.,* FED. R. CIV. P. 12(d) ("All parties must be given a reasonable opportunity to present all material that is pertinent to the motion."); *Tele–Commc'ns of Key West,* 757 F.2d at 1334 (requiring court to "assure itself that summary judgment treatment would be fair to both parties" before converting motion to dismiss to motion for summary judgment).

The plaintiff in this case has requested discovery before consideration of summary judgment in order to "shed light on the veracity of defendant Lattimer's allegations . . . [in order] to adequately oppose defendant Lattimer's motion for summary judgment." Pl.'s Opp'n at 32. The plaintiff has submitted a sworn declaration attesting that further discovery is necessary to, *inter alia*, "ascertain the research and investigation allegedly conducted by [the defendant] prior to the filing of a lawsuit on my behalf," Affidavit of Mable Jones ("Jones Aff.") ¶ 23, ECF No. 21-4, to uncover "any information or documentation to demonstrate that Mr. Lattimer uncovered more information and witnesses than law enforcement," *id.* ¶ 24, and to determine if the defendant's affidavit correctly states that the defendant "actually conducted adequate research to determine the viability" of the plaintiff's claims. *Id.* ¶ 25. *See also* Pl.'s Opp'n at 31–33. The defendant responds that further discovery is not necessary because it will only confirm what the defendant has already "explained . . . to the plaintiff at the outset" of the representation. Def.'s Reply at 24. The defendant argues that "there is no discovery that the plaintiff can obtain,

18

manufacture, or create that will suggest" that the defendant did not "take all necessary actions." *Id.*

The Court disagrees with defendant Lattimer's contention that discovery is unnecessary with respect to his claim that the plaintiff has failed to state a cause of action. In light of the plaintiff's contradictory views of what transpired in her communications with her prior counsel, the Court concludes that the plaintiff has not had a "reasonable opportunity to present all material that is pertinent" to the issues raised by the instant motion. *See* FED. R. CIV. P. 12(d). Accordingly, the Court will not convert the defendant's motion to dismiss into a motion for summary judgment with respect to the defendant's first claim for dismissal.

## IV. CONCLUSION

For the foregoing reasons, the Court concludes that the defendant's motion to dismiss must be DENIED. An appropriate order accompanies this Memorandum Opinion.

Date: March 6, 2014

_____
BERYL A. HOWELL
United States District Judge